IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| VENILDA HERNANDEZ, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| vs. § | 5-23-CV-01403-OLG-RBF |
| § | |
| MARTIN O'MALLEY, COMMISSIONER § | |
| OF SOCIAL SECURITY; § | |
| § | |
| *Defendant*. § | |
| § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando Garcia:**

This Report and Recommendation concerns Plaintiff Velinda Hernandez's request for judicial review of the administrative denial of disability insurance benefits under Title II of the Social Security Act. This action was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules and the docket management order entered on October 8, 2019, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration, *see* 42 U.S.C. § 405(g), and authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

As discussed further below, the Court recommends that the decision of the Administrative Law Judge (ALJ) be **REVERSED and that the case be REMANDED** for further consideration consistent with this report and recommendation.

1

**Factual and Procedural Background**

Venilda Hernandez is a former Certified Nursing Assistant (CNA) in her forties. She first filed an application for disability insurance benefits on September 30, 2021, alleging a disability onset date of April 18, 2019. Tr. 244-47. Her application stated that she could not work due to degenerative disc disease, peripheral neuropathy, migraines, and back and neck problems. Tr. 294. The Commissioner denied her application both initially and on reconsideration, leading Hernandez to request a hearing before an ALJ. Tr. 15-26, 105-09, 112-19.

On April 20, 2023, the Commissioner held a telephonic hearing before an ALJ, at which Hernandez, her non-attorney representative, and an impartial vocational expert attended. Tr. 18. Among the evidence considered by the ALJ was Hernandez's prior medical records including, as pertinent here, the reports of two state-agency medical consultants, Dr. Jack McWatters and Dr. Kim Rowland. Each consultant independently concluded Hernandez could only stand at most four hours in an eight-hour workday. Tr. 62, 72-73. At the hearing before the ALJ, Hernandez testified that she could stand for approximately two hours during an eight-hour workday and that she spends approximately 20 hours lying down per typical 24-hour day. Tr. 43-44.

On May 10, 2023, the ALJ issued a written opinion applying the five-step sequential analysis required by the Social Security Regulations. Tr. 15-26; *See also* 20 C.F.R. § 404.1250(a)(4). At step one, the ALJ found Hernandez had not engaged in substantial gainful activity. Tr. 20. At step two, the ALJ found that during the relevant period, Hernandez had the severe impairment of "degenerative disc disease of the cervical and lumbar spines." Tr. 20. At step three, the ALJ found that Hernandez's limitations did not meet or medically equal the severity of the impairments listed under the regulations. Tr. 21. In his analysis, the ALJ found that Hernandez

> has the residual functional capacity to perform light exertion work as defined in 20 CFR 404.1567(b) except for occasional pushing and pulling with the upper extremities, occasional reaching above shoulder level, frequent reaching below shoulder level, occasional climbing stairs; no climbing ladders or scaffolds; occasional kneeling, crouching or crawling, no exposure to heights or hazards like moving machinery, and avoid exposure to vibration.

Tr. 21. The regulations define "light work" as work requiring "a good deal of walking or standing, or . . . involv[ing] sitting most of the time." 20 C.F.R. 404.1567(b). Further, "[t]o be considered capable of performing . . . light work [the claimant] must have the ability to do substantially all of these activities." *Id*. The Commissioner has clarified that light work requires the claimant be able to "stand[] or walk[] for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24 (1983).

In making the residual-functional-capacity determination, the ALJ "considered the medical opinions and prior administrative medical findings." Tr. 21. But the ALJ discounted Hernandez's own statements about her ability to stand, finding her "subjective complaints . . . not entirely consistent with [her] treatment history," particularly because Hernandez suffered a car accident several months after her alleged disability onset date and "from which her primary impairments stem." Tr. 23. And the ALJ found the opinion of state agency consultant Dr. McWatters only partially persuasive because "the treatment record generally showed full strength and sensation, intact reflexes, [ ] intact range of motion of all extremities . . . . [, and] unassisted ambulation, intact transfers, and intact heel-toe stand." Tr. 24. The ALJ similarly found state consultant Dr. Rowlands' opinion partially persuasive, because while the opinion "generally show[ed] intact range of motion of all extremities, normal fine finger mobility, and otherwise unremarkable dexterity […] the absence of any environmental limitations [did] not fully account for the evidence showing history of herniation to the lumbar and cervical spines, slow gait and diminished bilateral Achilles reflex." Tr. 24. Ultimately, the ALJ concluded that

Dr. Rowlands' "other assessed exertional limitations . . . as well as postural limitations, [were] more consistent with the [other record] evidence." Tr. 24. The ALJ did not elaborate on how these medical findings could impact Hernandez's ability to stand or perform light work.

Rounding out the sequential analysis, the ALJ determined at step four that Hernandez could not perform any past relevant work. Tr. 25. Finally, at step five the ALJ concluded "there are jobs that exist in significant numbers in the national economy that [Hernandez] can perform," including the representative occupations of "furniture-rental consultant, school bus monitor, and ticket seller." Tr. 35-26 (internal citations omitted). The ALJ did not explain the discrepancy between these jobs requiring "a good deal of walking or standing," *see* 20 C.F.R. 404.1567(b), and Hernandez's difficulty standing more than a few hours at a time.

After the ALJ issued his decision, Hernandez requested review with the Social Security Appeals Council, which denied her request. Tr. 1-5. That denial rendered the ALJ's May 10, 2023, decision the Commissioner's final one. Tr. 1. Hernandez then timely sought review in this Court. Dkt. No. 1.

## Legal Standard

Judicial review of Social Security disability decisions "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and less than a preponderance." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quotation omitted). "It refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation and citation omitted). "In applying this standard," the Court must "not reweigh the evidence or substitute [its] judgment for the

4

Commissioner's." *Id*. (quotation omitted). And the Court can rely only "on the grounds that the Commissioner stated for his decision." *Id*. (quotation omitted). Finally, a claimant is not entitled to relief unless he can show prejudice. *See DeLeon v. Barnhart*, 174 Fed. App'x 201, 203 (5th Cir. 2006).

## Analysis

The ALJ appears to have crafted a residual-functional-capacity finding premised on rejecting, in pertinent part, opinions of two state agency non-examining consultants, Dr. Jack McWatters and Dr. Kim Rowland, and instead relying on his own lay interpretation of raw medical data. Both doctors concluded that Hernandez can only walk or stand for up to four hours per day. Tr. 62-64, 72-74. The ALJ, however, found both opinions only partially persuasive and declined to follow either doctor's findings on Hernandez's four-hour limit to standing or walking. Tr. 21, 24-25. In doing so, the ALJ failed to construct a logical bridge between the evidence of record and the six-hour limitation implicitly imposed in the ALJ's residual-functional-capacity finding. Accordingly, there is no substantial evidence in support of the ALJ's decision, and remand is required.

Although "[t]he ALJ [is] not required to base [a claimant]'s RFC on any particular medical opinion," *Thompson v. Soc. Sec. Admin.*, 2024 WL 1886757, at *2 (5th Cir. Apr. 30, 2024), "[w]ithout a medical expert's input, the ALJ [is] not permitted to draw his own medical conclusion from . . . data because [a] lay person would not readily understand how medical notations . . . impact one's ability to work." *Graham v. Comm'r of Soc. Sec.*, No. 2:22-CV-00161-HSO-BWR, 2024 WL 1009538, at *5 (S.D. Miss. Jan. 23, 2024), *report and recommendation adopted*, No. 2:22-CV-00161-HSO-BWR, 2024 WL 472513 (S.D. Miss. Feb. 7, 2024) (internal quotation omitted). The Commissioner at the hearing acknowledged that an

5

ALJ cannot rely on his own interpretation of raw medical data and must build a logical bridge from the evidence of record to the ultimate residual-functional-capacity finding. Here, many or all of the matters cited by the ALJ's ruling in connection with rejecting both doctors' four-hour standing or walking limitations bear the hallmarks of raw medical data. *See* Tr. 24-25.

Admittedly, it can be difficult to draw a clear distinction between raw medical data and objective medical evidence. The regulations are not particularly helpful in this regard. But courts have drawn a helpful distinction by, for example,

> clarifying that objective medical evidence refers to "medical evidence where the extent of functional loss and its effects on job performance would be apparent even to a lay person," while "raw medical evidence" refers "to evidence that does not permit 'common sense judgements about functional capacity.'"

*Graham*, 2024 WL 1009538, at *13 (quoting *Moore v. Saul*, No. 3:20-cv-161-MPM-JMV, 2022 WL 987735, at *2 (N.D. Miss. Mar. 31, 2022)).

The Court ultimately need not draw the line here between raw medical data and objective medical evidence because a second guiding principle informs the Court's decision. According to that principle, which the Commissioner acknowledged at the hearing, an ALJ must build a logical bridge from the evidence to the residual-functional-capacity finding ultimately imposed. *See, e.g.*, *Price v. Astrue*, 401 Fed. App'x 985, 987 (5th Cir. 2010) (per curiam) (noting that the ALJ must "build an accurate and logical bridge between the evidence and the final determination"). Here, the ALJ didn't build this bridge with respect to the six-hour limitation implicit in the ALJ's light-work requirement included in the residual-functional-capacity finding and posed to the vocational expert at the hearing.

After reviewing the ALJ's ruling, the Court cannot determine how the evidence cited by the ALJ supports a six-hour standing workday for Hernandez instead of a four-hour one. In discussing Dr. McWatters opinion, the ALJ's decision first explains that the doctor "found the

claimant could . . . stand and walk for 4 hours in a 8-hour workday," and that "Dr. McWatters supported his assessment with citation to the medical evidence of record, such as MRI and physical examination." Tr. 24. The ALJ's decision then discusses limitations to lifting, carrying, and sitting, postural and environmental limitations, unassisted ambulation, intact transfers, intact heel-toe stand, and the absence of reaching limitations; there is no connection made between these matters and the imposition of a six-hour walk-or-stand limitation instead of a four-hour limit. The same is true with respect to the ALJ's treatment of Dr. Rowlands' opinion. All that is offered is an apparent *ipse dixit*.

Additionally, nothing in Hernandez's testimony at the hearing supports a six-hour finding. When asked explicitly about how long she could stand in an 8-hour workday, she testified that she could stand for at most 2 hours, and sit for at most 2 hours, with the remaining time spent "just laying." Tr. 42-44.

Harmful error is required for a reversal and remand. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). The ALJ's error here is harmful because the ALJ asked no hypothetical to the vocational expert involving a four-hour limitation. *See* Tr. 53-55. Thus, there is no substantial evidence at step five regarding jobs in the economy available to a claimant with Hernandez's limitations, including a four-hour walk or stand limitation. Remand is therefore required.

Finally, a remand to a different ALJ is not warranted here, as Plaintiff fails to convince the Court that such relief is warranted. Nothing presented appears to require the extraordinary relief of removing the ALJ and requiring *de novo* review before a new one. *Cf.* Pl.' Br. at 12 ("On remand, Hernandez requests the Court instruct the Commissioner to appoint a new ALJ to hear her case and review it *de novo*.").

7

**Conclusion and Recommendation**

For the reasons discussed above, the Court recommends that the decision of the ALJ be **REVERSED and that the case be REMANDED** for further consideration consistent with this report and recommendation.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely

file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 27th day of February, 2025.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE